C. Good morning, Your Honor. Maria Osorio on behalf of Petitioner BMG with me is Tammy Goodflett, also on behalf of the petitioner. May it please the court. This case is about a family's fight to stop crime in their small community and the affirmative and public steps that they took against the M-18. In December of 2012, BMG's husband witnessed his friend be murdered by the M-18. He was immediately threatened that he should not say anything about what he had witnessed. But because he firmly believed that the M-18 should not be able to kill with impunity in his community, he testified anyway, despite the government telling him that they could not protect him. Then on Christmas morning, 2013, the M-18 executed BMG's husband in the house that he shared with her and his kids. BMG was the only non-gang member witness to the crime that night. She knew all of the gang members in her house and they all knew her. When they saw her, they told her not to say anything about what she had witnessed or they would also kill her. But that night and in the months that followed, BMG repeatedly assisted the police with the investigation despite the threats because she also believed that the M-18 should not murder with impunity. Based on the information that she provided, several of the gang members were arrested that night. After the arrests, their attempts against BMG escalated and they shot and destroyed the house of her mom where she was hiding with her children. She reported the shooting to the police, but they told her that they could not help her. Despite this danger, she still agreed to testify in court. She agreed to testify in court under the protection of the Salvadoran government, specifically a witness protection law. Where is that in the record that she actually testified? Are you saying she testified because the record seems to reflect that she gave evidence or was interviewed at a police station with some sort of covering, but does not seem to reflect any testimony. That's a question that's directly relevant to the social group that is alleged in this case. The social group is people, witnesses who testify against gangs. That's the alleged social group, but I don't see in the record where your client, and obviously this is a horrific thing that you've told us, but where in the record does it say that she testified or was testifying or something? Yes, Judge Albrod, actually the record does reflect that she believes that she was, her belief was that she was in front of a judge. She testified that the questioning in that interview was very different from the previous interviews that she had given. She said it was just incredibly more detailed and she had to travel to a special, and she believes it's a police station, but it's not uncommon for courtrooms to share police stations in Central America. But that was not, but the immigration judge, there's no finding that she was testifying. The immigration judge found that she was not testifying. And that's not, you know, there's a high standard for the factual findings, and so don't we have to take it that she wasn't testifying? And if we have to take it that she wasn't testifying, then how do you at all, you want to have this new social group in our circuit, and you acknowledge that it's a new one in our circuit, but it's, she doesn't qualify for the new social group. Can you help us with that? So there's two points to your question, Judge Alrod, is that we believe, our position is that the most egregious error was that the agency did not really review the evidence at all. It focused just on her testimony that she gave that day, where the record, and so then that would be a de novo review standard, not a factual finding. And so Why would there be a de novo review of what I.J. found? Well, our position is that they misapplied the definition of membership, which would be the legal definition to the application of undisputed facts, and then just generally there was no citations, no mention to anything else in the record other than just her testimony in the merits hearing that day. Her asylum claim depends on well-founded fear of persecution on behalf of, and then one other list of things. Did the I.J. and the BIA, they deem she lacked credibility as to well-founded fear of persecution? No, they found her credible. Okay. So the well-founded fear of persecution here, you will be killed like you saw your husband get killed right in front of you on Christmas Day. None of that's disputed. So this turns on whether it was on account of political opinion. Is that correct? They also didn't find any protected grounds. Right. But the protected grounds would include political opinion. Okay. And as I understand your argument, you say that they erred because either it was explicitly her political opinion or it was because she's a member of a group that has social distinction, is immutable, correct? Yes. Okay. But it is true that our court hasn't yet adopted the Enrique Rivas and the Guzman theory. And you're asking us to, but do you still win even if we don't because what she did is political opinion? Yes, that is our position in addition to her belonging to the particular social group. Now you, Judge Elrod was asking you about what I think would have to be true in terms of the particular social group, which is that it isn't just formulaically that you're in a court the way we in America think of in a court, publicly testifying under oath. It is when you cooperate with a government to fight crime and the cooperation is public, it's known. Is it undisputed that the gang knew that she was cooperating? Yes? Yes, they knew. Okay. So Guzman fits pretty closely. I believe so. Has the BIA adopted this theory, the BIA itself, this year? Yes, I believe in the case of HLSA recently they recognized. They did, but you didn't cite it, but they did and that's a really important BIA holding. I agree. Well, if you know the case and it's right on point and it's the BIA in January this year, both sides should have informed us about it. It's critical to this case or is there something I'm missing? How is that case not on all fours? Well, with the case of HLSA, excuse me, yeah, so the case of HLSA, the BIA did find that Enriquez at the Ninth Circuit in the case of Enriquez-Rivas didn't foreclose the possibility of individuals who file a police report and do nothing else, that that could be a particular social group. If the cooperation is publicly known, that's the critical social distinctiveness, correct? Yes. So how is this case different than that? So her testimony was, our argument is that it was public. She was told that it was going to be used for, in trial, in lieu of her having to show up because she was, because she was afraid. And so it's sufficiently public, in addition to the fact that the MAT knew who she was. So it was definitely public to them. But again, the critical thing is, it's an undisputed fact, accepted by the IJ, that the gang knew she was in cooperating, recorded in a secret witness protection room. None of that's disputed. It is disputed whether she's in a witness protection program, isn't it? I don't believe that it's disputed. What the agency found was that it was more likely to have been an interview. Right. They did not, it is disputed that IJ did not find, in fact, found it was probably just a police interview, not a witness protection program. That's correct. But the record does show. Is that correct? It negated that it's witness protection? It did. Okay. Yeah, I believe it did. But the record also has a letter that BMG provided from the Salvadoran government saying this person was a witness. It uses her pseudonym, but she was the only female witness that night. The letter references a female witness. The letter says that she's under the protection of the Salvadoran government and specifically the witness protection. Doesn't that cause a problem, too, though? Because it has to be that the country won't do anything and won't protect you. And if, I know there is the incident at the house, but you can be protected and or you can move to a different region. You have to negate both of those, don't you? And they say they're protecting. If your argument, which may not be what the IJ agrees with, is that they are actually protecting her, doesn't that negate the argument that she can't be protected or that they're acquiescing with the gang? That seems to be in direct conflict. Normally, we don't have witness protection people saying that the government has acquiesced. Well, Your Honor, I believe it's the case of Garcia where, oh, no, I'm sorry. It is the Enriquez case where the applicant was also under witness protection and the court found that they're not mutually exclusive of each other, that you can provide. Is that our circuit? Pardon? Is that our circuit? No. It is the Third Circuit. Counsel, I do also have a question about the groups. Given that we did not recognize a group of crime victims or retaliation victims in the Arguenta Luna case earlier this year, just last month, and we also rejected non-criminal witnesses who report crimes, and we also rejected witnesses to crimes committed by government officials, which would seem to be even more difficult if the government official is involved in the crime. We've rejected all of those social groups. Is it like, how would it be consistent for us to accept this social group when we've rejected three similar social groups already in this circuit and we're bound by that? Well, I would say that BMG didn't just report a crime. She consistently reported all of the attempts against her. And she went above and beyond just being someone who reports a crime. She did a handful of interviews with the police, and then including this one that she says was in front of a judge. And that's not merely reporting a crime. She consistently. Because we struggle, all the courts, even the Ninth Circuit, is worried about what's the limiting principle, right? And so it can't just be every crime victim in El Salvador, tragically. So you would say, give us as bright a line, a limiting principle, why your client is more in the world of people who get on the stand and testify than people who just report crimes. What is it that is undisputed in the record? Because you're facing a really strict standard of review. The record compels the conclusion that she was this, what? Well, that she was a witness who provided testimony that was public. Right. And that's undisputed. Witness, she provided testimony in a recorded statement. That's the distinction? Yes, I believe so. Yes, in addition to all of the extra steps that she took. You need to be confident about this. It can't be believe, right? Oh, sorry. Yes. I mean, yes, that is the distinction from the other cases, is that she took all of these extra steps to publicly give her testimony to a judge in a- Well, but again, you have to be precise. Judge Elrodge, is it undisputed she gave it to a judge? It's not undisputed about that. She was found credible. And she said that she had given it to a judge. The IJ found that it was more likely that it was just- may I finish my statement? Certainly. The IJ found that it was more likely that she had just been- that she was only talking to the police. Thank you. Thank you. Thank you, counsel. You've saved time for rebuttal. That's correct. Thank you. May it please the court, I'm Christina Greer on behalf of the United States Attorney General. You're from OIL? Yes. And we appreciate you appearing in person. Was that a special request you had to make? It was not. I'm actually here because I have a case tomorrow where we requested that I appear virtually, but that request was denied. So I figured I'll be here anyway. Were you familiar, you're an expert in this area of law. Are you caught off guard with the reference to HLSA, or did you know that case? No, I knew that case. That was one of the first things I was going to address. Well, I guess I'll just sort of give my preliminary statement and then move to discussing a particular social group and matter of HLSA. So your honors, petitioner claims that the agency made legal errors. But here, as Judge Elrod pointed out, the standard of review is the substantial evidence standard, because what petitioner argues with or challenges are all factual determinations made by the agency. Justice to the final element, that it isn't on account of political opinion or PSG, that there's no dispute about well-founded fear of persecution. Correct. I wouldn't say there's no dispute. Those weren't reached. And so we can't say that the agency didn't agree with those findings, or didn't make those findings in the first instance, but also did not, right, the agency did not address those issues. The friend's killed, the husband's killed in front of her eyes Christmas day, the house is shot up, the police say you better leave. It's pretty hard to say those facts, if credited, don't get you all the way to why. That very well could be the case. I'm just saying that the agency didn't make those determinations. So I can't say that they're not disputed, but they aren't before the court in this case. OK. But on the issues of particular social group, imputed or actual political opinion, on account of, and CAT, all of those challenges are to factual determinations the agency made, and are reviewed for substantial evidence, requiring petitioner to establish that the record compels a contrary conclusion to that of the agency. And so I'll begin with the protected grounds. So there are two, somewhat three, protected grounds. The first one that I will address is particular social group. And your honor is correct, Judge Higginson, that a matter of HLSA came out earlier this year. And the reason why I did not submit a 28-J letter about that case is because cognizability is not at issue here. The agency did not address whether a group of witnesses who testify against the gangs is cognizable. They somewhat assumed cognizability and said it doesn't matter, though, because petitioner is not a member of the group as she defined it. That's a kind of thin read. I understand the distinction. In fact, we were just talking about the distinction. But isn't the better part of valor to submit these 28-Js with new laws, especially when you're the agency and it seems like that? Even if you can distinguish it, it I will remember that in the future. I apologize, your honor. Well, the big, I guess that brings up the big question. Is the government here asking us to create a split with the Ninth Circuit and the Guzman decision and HLSA? Are you saying that this is not a recognized, that the reasoning there, people who testify in public? Or are you accepting that? We're accepting that. We're just saying that she did not, the way that she defined her group, she did not establish that she's a member. And so we're not asking the court to come to any conclusion about whether her group exists. That's assumed. Or whether the other group, the Enrica Revist group, which has been in existence since 2013, doesn't exist. You're not disputing that? You're right. Yes, your honor. We are not disputing that. The honoree man, the IJ, made a very clear finding. She didn't quite get into that group. Is that the? That's correct. And that's what we are defending here. What we're saying is Petitioner defined her group as witnesses who testify against the gangs. And she specifically defined that group in reference to Enriquez Revis, where the Ninth Circuit only found the group cognizable because of where applicants testify in public against gangs. And what we're saying is the agency's factual determination that she did not establish that she testified publicly in court against the gangs, that the record doesn't compel a contrary conclusion. But I guess I just don't understand that distinction. Let's just put ourselves in the United States. Someone's willing to testify against the mafia. Isn't it the functional equivalent if they give testimony, record it, and then the mafia finds out they did that? What's the difference in terms of immutability, particularity, and social distinction to the person who ends up on a stand? I guess that sort of moves to the on account of requirement. And here, Petitioner did not show that anything happened to her after, or anything different, at least, happened to her after she provided the testimony, or that the gang members knew that she provided the testimony. The police said, you need to flee. Yes, but in order to establish persecution on account of a protected ground, the applicant must show that the persecutor knew that the individual was a member of the particular social group. In other words, she had to show that the gang knew that she testified against them. But the record does not contain that information. In fact, her testimony was anonymized. She had a head covering. It appears that she was only questioned by one person. I thought it wasn't disputed that they've even been shooting up her house since she fled. That's, I don't know that there's been a shooting since she fled, or since she left the country. The shooting happened, it appears in the record. I would definitely like opposing counsel to address that on a rebuttal. I thought it was not disputed that there are still shots being fired at the family's house. You say that's not correct in the record? It may not be. I don't believe so. The only shooting that I recall happened, it appears, according to the record, to have happened before she provided the witness statement that was recorded. OK, no acts of hostility after that moment when she was recorded. There have been, I believe, the record is unclear. We addressed that in a footnote, and I apologize, I don't remember which footnote in our answering brief. That would be very significant, because that would suggest that they do know that she was testifying against them. And therefore, this fine-grained distinction would have to be, yes, but not in a court of law, albeit both witnesses fully known. But that's how she defined her group. And under matter of WYC, an applicant is sort of, I don't want to say hemmed in, but they delineate the group. And if she is not a member of the group as she delineated it, that is a problem with her proof. She could have delineated the group differently. She could have not said this group like Enriquez-Rivas. She could have defined it differently as, and I'm not saying that any of these groups would be found cognizable, but she could have delineated her group differently. But instead, she chose to define her group as the group was defined in Enriquez-Rivas, and she does not fit the requirements of that group. Did the Fourth Circuit loosen the group in Guzman or not? In Garcia, I believe. I keep thinking it's Guzman. But maybe, no, no, no, don't apologize. I kept thinking, is it Garcia or Guzman? Not necessarily, because the petitioner there did appear in court multiple times. And the testimony. So the government's position is that you got to appear in court. That's the group. That's how she defined her claim. That's how she defined her group by reference to cases where cognizability turned on public testimony. And so, as I said, she could have defined her group differently. But the way that she defined it, she is not a member of the group. The government agreed to a joint remand before. So I'm sure this case and her situation, these acute facts, have been looked at very closely by the government. We're talking about whether she defined into a group or not. But obviously, the human circumstances are very compelling. And I'm correct in this case. You agreed to a joint remand before, didn't you? Yes, the government did. And there are any number of reasons why the government may join in a motion to remand. I know. I'm just saying, therefore, it's been given a lot of look at her particular consequences. And her daughter will be sent back. Yes. And the issue here, though, is whether what happened to her, which, as we admitted in our brief, is horrific. And she took laudable steps to help the police in prosecuting these gang members. Which is what her husband did, which is why he was killed in front of her. Yes. But the way she has framed her claim. I know, what framed her claim. All right, well, let's move away from the framing of the particular social group. Perhaps that isn't acceptable, even under the circuits that have adopted it. I don't know what the government's position was in HLSA. Arguably, factually, it's distinct, or our court might not accept it. We have some law. Let's just talk about political opinion. The government's brief adopted the IJ's view, which is the timeline here, rebutted that it could be political opinion. Is that correct? That's one of the findings, yes, Your Honor. So that is somewhat, and there's not a bright line between these issues. There are sort of two political opinion claims. One is that she expressed an actual political opinion through her actions. And the second is that the gangs would impute a political opinion upon her. Put imputation aside. OK. As to actual political opinion, there's also the issue that it also melds a little bit with, which is nexus or on account of, and we've seen that also in particular social group. So I want to say that our argument on this is somewhat in two separate areas, because we addressed the political opinion separately from nexus, but also addressed the political opinion piece in nexus. But when it comes to actual political opinion, Petitioner did not establish that her actions expressed a political opinion. As the immigration judge and the board stated, the evidence overwhelmingly showed that this was about a personal interest. And there is a case that I will submit a 28-J letter about as soon as this argument, or once this argument is over, that I recently found and did not have a chance to prepare a 28-J letter about, but that I would point the court to, and that's Zelaya Moreno versus Wilkinson in the Second Circuit. It was issued in February. Did you tell opposing counsel about this case while you were both waiting here in the other cases? I did not. I did not know who opposing counsel was beforehand. It's a published Second Circuit opinion? Yes, it is a published Second Circuit opinion. It is 989 F3rd 190. So I'm OK with not addressing it during this argument, and can just address it during a 28-J letter if the court would prefer. Your time's running out. It's really important to me here. When she is reluctant, she's seen her husband killed for cooperating, police come and say, you've got to cooperate. She's got a child. She doesn't really want to, but then she does. It's clearly a political act. It's a required citizen's act. So why isn't that anti-gang act a political opinion? One thing that, again, Zelaya Moreno discusses is that actions that challenge or seek to challenge policies or practices serve as stronger evidence of a political opinion when they are not wholly self-serving. And here, what she testified to is that she did not want to report the murder of her husband until the police told her, well, we won't investigate if you don't. And then she decided to report. Wholly self-serving, yeah. At least that factors more toward it being a personal act rather than a political act. So this is on a spectrum. It's not a clear cut. I'm just interrupting you because your time's short. So your view is the IJs, and you stated in the brief, that that's a political act because it's self-serving. It was personal interest to get the crime solved. And likewise, is it also, and therefore the corollary, but a necessary corollary, that the gang wasn't suppressing political speech. They were just trying to stay out of jail. Yes, and that's what her testimony stated on page two. And do both have to be disproven by her to prevail? Yes. OK, so here's my question. Because asylum relates to being a future fear of persecution. She's now going to be sent back by the US government. She has a well-founded fear that just like her husband, she'll be killed. Why is it not at this point exclusively political? She has no ongoing interest in the case. It's over with. The gang isn't seeing her as someone that'll keep them out of jail because the guy's in for 20 years, and the other nine are out there waiting to kill her. So why isn't it now fear of future prosecution ironclad on this record? First of all, that's not an argument that was presented to the agency. She says she has political opinion. Your answer is no, it's self-serving because she just wants her crime solved. And after all, the gang, they see a distinction. It's not political because they just want to stay out of jail. But it's all over with now. You're going to send her back. She has no interest in the case. The gang doesn't have any interest in staying out of jail because they lost the guys in jail, and they're very angry. How would that not be a well-founded fear of certain political death? Because of her status, she cooperated. And that's different than seeing what she did as a political act. There's a difference between reporting a crime that happened to you versus taking steps, for example, engaging in crime. But you relied on the Second Circuit. You say it's not political opinion because it's wholly self-serving. How is it now self-serving? The case is over with. I don't know that I believe this is something the agency should address in the first instance, whether the past action of having reported a crime necessarily at the end of the proceedings, any harm that happens after those proceedings, or then necessarily on account of political opinion, where... What's wrong with the logic? And, of course, the agency can think whatever it wants to think of before they decide to send her back. But, I mean, I'm asking you, what's wrong with that logic? I was troubled by your brief in the IJ's logic about there's some distinction. When you report a crime and the police make you cooperate, that that's all self-interest. I don't see it that way at all, having been a prosecutor for 20 years. That is a public act. You're cooperating to give testimony. But I understand that that is the line that's being urged. But now it completely unravels. She has no self-interest. Going back, case is done. Whatever testimony was given, it got one of the gang members put in jail for 20-plus years. But the other nine are out. That seems like the most horrific real circumstance. They would only want to kill her because she cooperated, the status of cooperating against a gang, successfully. But that's not the claim she brought. She did not say that she is a member of a group of people who helped police against the gang. I'm not putting her in a political social group. I'm saying she has a political opinion. She's already expressed it. She can never take it back. But did she actually express a political opinion? Just saying one is against the gangs because they kill people does not necessarily express an inherently political opinion. And that is what would be required. There's plenty of circuit law Chinese students that protested against the Chinese government and the police in Tiananmen, right? They get exactly what she wants. But that's the government. That is a political entity, whereas here we're talking about a gang. But here the government forced her to testify against a gang, and at the same time, the government said, we can't protect you from them. I don't know that the government forced her to testify against the gang. I thought you just told me that they said, we won't pursue the crime without your cooperation. They did, but she's taking the position that she didn't have to do that. She's doing it because of a political opinion. So I don't think we could also at the same time say that she was forced to testify. She wasn't forced to testify for one thing. She could have just reported and didn't have to do the rest of it. But I would urge the court to look at Zelaya Moreno because it does address this, where you have a criminal organization where an individual expresses an opinion against that organization, just sort of a general, I don't like what the gangs do, or the gangs are bad people, or like here the gangs should not be able to kill with impunity, that that is not an inherently political opinion. Seeing a similar situation when someone goes again, or states that they are unhappy with general circumstances within a country. It's very similar. That's not necessarily a political act. And again, this is a factual determination. And so the immigration judge had to say yes or no, but there's a spectrum there. And the immigration judge said this looks more like personal interest than political opinion. But it never thought about the logic of its reasoning, that it ceased becoming personal interest at all when the case was over and the guy got incarcerated. And yet we have to think about an asylum case that also looks at fear of future persecution. But did her opinion change? And that's the question. She has to be harmed on account of her political opinion. And it sounds as though what you're talking about is more like circumstances. But the question is, does she have a political opinion? My political opinion is I want to help the government prosecute gangs like people in the United States. My political opinion is I'm performing something vital to the rule of law. How is that not a political opinion? She believes in the rule of law. If she's asked to cooperate and testify, she does. Her husband did it and he lost his life. The police say, we can't protect you. So she leaves. And actually, may I move just briefly to Catt? Your Catt argument's strong as far as I'm concerned. Okay, if the panel doesn't have any questions about the Catt argument, then I will just. I don't have any questions about the Catt argument, but I have a question about the motion that was filed by opposing counsel and that's been carried with the case. Could you please address that? Yes, Your Honor. The request for a stay. The request for a stay regarding Matter of A.B. So as the court heard today, Matter of A.B. really doesn't have anything to do with this case and Petitioner hasn't established that even if Matter of A.B. were vacated or something else happened with the decision that it would have any impact on this case. And so, and especially this has been known since February about the executive order and also this argument has been set since April 30th. So the primary reason for opposing is judicial resources. The court was, or the case had already been set, but also because Matter of A.B. really doesn't have any bearing on this case, either A.B. decision. In the first decision, the Attorney General addressed whether domestic violence, or whether a group that had been identified in a different case in the domestic violence realm was a particular social group, and then also the requirement for unable or unwilling. Neither of those are at issue here. In the second decision, the court again considered unable, unwilling, and also nexus, but the on-account of requirement as applied here doesn't really rely on Matter of A.B. In fact, I believe the immigration judge's decision, or it definitely was, both decisions were before Matter of A.B. too. So. Thank you, counsel, we have your argument. Thank you. Thank you. So I'd first like to address the point of the bright line limiting principle regarding the particular social groups. And BMG, she was the only witness to the crime that night that was not a gang member. And she provided testimony to be used in trial. So under these facts, she is a member of the particular social group of witnesses that testify against the gangs. And our position is that her testimony was sufficiently public. Anytime a crime victim is the only witness, and they talk to the police, that's just, it's gonna be hard for courts to accept that expansion of Enrique Rivas. Well, our position was that she didn't just talk to the police, that she provided formal. Are you familiar with the Second Circuit opinion? I'm not, and I was hoping to ask if you guys would like me to brief, the court would like me to brief it, excuse me. The counsel's gonna file a 28-J within three days, and then within seven days after that, you will confile a 28-J response brief, you know, a letter responding to the case and providing any authority that responds as well, okay? Thank you, but not to exceed five pages. Thank you. If you don't win, does she have any other pending, or any other methods, or would it, in this case? Well, I wasn't able to address her cat claim, which I do believe was based in an error. Her case is not a string of suppositions, as the court found, or the IJ found. She does offer more than hypotheticals. She did survive a murder attempt, and her husband was killed and told that the government couldn't protect him. And so we believe that that meets the standard for cat. Next, I would like to quickly turn to the BIA's review of the evidence. It's our position that the BIA simply reacted to her testimony in her merits hearing. There's almost an exclusive focus on what she said. As I mentioned earlier, there's no citations to the State Department reports, which provide information regarding the position that she was in. It provides political and social context in which the persecution. They didn't bring this up, and you didn't bring this up in preliminary. They didn't bring this up in advance, right? This is the new information? Pardon? This is the country report argument? Well, we did submit country reports, but yes, they did it. So this is, we believe that the agency didn't properly review any of the evidence. And then, so the standard, excuse me. Did the Harvard Clinic Eniki sources, were those submitted to the IJ, or is the government right that those points haven't been exhausted? I don't know the answer to that question, Your Honor. Sorry about that. And so, the agency's review of only her testimony is not a sufficient review of the evidence. Could IJ be right that the law describes her views as self-interested, reporting my own crime, not political opinion, and yet that same status, once the case is successful, would no longer have any self-interest quality on either side, or her persecutors or hers, so that she might have a well-founded fear of persecution? You heard my inquiry. Do you understand even the logic, or would you not want to embrace that view? I'd probably not embrace it. I just, she continues to have fear of returning to a side by side. Her family had been threatened after she left, so she still does have a well-founded fear of return to a side by side. Well-found fear of persecution on account of political opinion. Of her political opinion. And if we're gonna say what her views were when she was cooperating and the case hadn't been brought, and the answer is no, it's all about still, can you prosecute? At this point, that's done. There's no self-interest. So her status is fixed. It's a purely political status, as someone who did cooperate. Well, I think that her status is continuing because that is still her position. And if she were to be returned, I can't imagine that she would stop believing that the M18 should be able to rule with impunity in their community. Yeah, I believe she would still hold that position that would, excuse me, I'm out of time. May I finish? Please address the motion to stay. Are you still seeking a stay? If the court would consider it, yes. We believe that, our position is that the court has granted abeyances before. But the argument is that it's not, there's no reason to abate for this or stay for this because ARC isn't relevant to this case. So yeah, the matter of AB case was cited in the most recent BIA denial for the position that gang violence would generally not be sufficient to prove a nexus. And so if that case were to get overturned or reconsidered by the Attorney General, we do believe that it would significantly affect this case because there was no nexus found initially. The BIA then used that case to uphold that position. And if it was overturned, then it would be significant in showing that gang violence can also be a nexus if it's motivated by other central reasons. Thank you, counsel. Thank you. We appreciate the arguments of both counsel here.